I represent the appellant Valentina Tairova. We are seeking a reopening of an in absentia removal order issued by the immigration court here in Los Angeles. I think it's important to understand from the position of the record itself that during all times relevant up until the removal order was issued, Mrs. Tairova, who doesn't speak English, was assisted by her son-in-law who handled everything for her. She resides in Salt Lake City, Utah. She and her husband had been admitted to the U.S. as visitors. She filed an application for asylum because she had been actually persecuted in Uzbekistan as an ethnic Russian and as a Christian. That application was filed about two weeks after she and her husband had been in the U.S. for one year and two weeks after the expiration of their authorized stay. This resulted in an automatic referral of the asylum application to the immigration court, which is what has initiated this whole problem for the Tairova family. In the meantime, Mrs. Tairova's only child, her daughter, became a U.S. citizen. She resides in Utah with her U.S. citizen daughter, son-in-law, and U.S. citizen grandchildren. At that time, she also resided there with her husband, who has since passed away. To get to the point, since there's not a lot of time to get to the point instead of circling around it, the IJ quotes, and I don't know that I've seen this in the record, but the IJ quotes what he told her at the first hearing. He very clearly told her what she had to do if she wanted to change venue. Very specifically, he said, and I gave her the documents, etc., etc. That's what he did. She says, well, I listened to somebody in Utah who said, nah, you don't have to do that. My question is, assuming that's true, that she did, and that's what they said to her, is there any authority that when the IJ has specifically told her what she must do, on the record, and made it very, very clear, in fact, that this change of venue is a difficult thing to do, you better get an attorney, etc., etc., any authority that when she's got that can short-circuit that advice? You see what I'm saying? I do. Any authority for it? I understand the arguments for it, but any authority for it? Well, the authority is that this court's Singh case says that the court should look at the totality of the circumstances, Your Honor. If we're talking about the Singh I think we're talking about, that was, you know, since every Sikh is a Singh, there's a zillion of those cases. If we're talking about the case I think we're talking about, that's a little different, isn't it? That's a case where the wife and husband, I think, they're asking to get this visa application. They get it. They come driving like mad to come to the court on time, and they fouled up. It was 1 o'clock instead of to get to court on time, and the thing has already been approved. This case is really quite different from that, isn't it? She hasn't tried to get to court on time, and as far as she knew, the visa wasn't even approved at that point, as far as she knew. Correct? As far as she knew, yes. She lacked... So she doesn't have an approved visa, so it's not that. She's just not going to court. Well, she clearly lacked the sophistication to know what she was supposed to do. She traveled 600 miles to Los Angeles for the first hearing, thus showing her intent and commitment to the, and respect for the process. Right. I'm talking about the second hearing, after she's told specifically. Now, I realize her affidavit, she says, well, I didn't understand what I was told, and I wasn't given the right to give that affidavit against what the record shows. So where do we go with that? It's not exactly the same. It's, this is a difficult case procedurally, Your Honor. It's obviously the, as I was explaining to counsel for the government, this is the argument for having a lawyer when you first become involved with the Immigration Service. Had that happened, this would have been a very simple, straightforward case. And he told her to get one. He said, especially if you want to change venue, you better get a lawyer. She was relying on her son-in-law, who was not at the hearing in October, but who handled everything for her, who had basically taken her under his wing and was assisting her in this whole process. They relied on the specific representations made by the Immigration Service in Salt Lake City. And in Salt Lake City, unlike Los Angeles, the, everything's right there. At least at that time, the Immigration Court, the Enforcement Division, and the Benefits Division are all in the same office. You all went to the same window. So they thought they were talking to the official representative of the court. And that court had, in fact, advised her to appear at the hearing, which she was very concerned about, and that's why they went in. And the 600-mile travel, the difficulty in getting to Los Angeles, she would have gone had she thought it was required of her, because that's what she did in October. Okay. She made, let's take it, she made a mistake. Is that a circumstance as extraordinary as serious illness or death, in your view? Yes. Which Congress has said the standard is. You know, we can't do it unless it's as serious as being down on your back or dead, I guess. Well, I guess if you're dead, it's irrelevant, Your Honor. I guess you're thinking about somebody else being dead, but anyway. I might want to leave from the right place, but never mind. Yeah, I think of it, once again, the totality of the circumstances standard operates to is truly an exceptional circumstance. But it can't just be exceptional. The old law, way back when, said exceptional, and courts did all kinds of funny things with the word exceptional, and Congress said, when we say exceptional, we mean it's as exceptional as a serious illness or death, and I think they've added something else, you're being beat up by your spouse or something. But that's how exceptional it has to be. Now, what makes her not paying attention to what the IJ said and listening to these other people as exceptional as serious illness or death? Well, I think it's different from her not paying attention to what the IJ said. I think it's beyond that. She did pay attention to what the IJ said, and that's what caused her to go to the Immigration Service in Salt Lake City to clarify this, because this is who they had dealt with. They had this case pending. The hearing was in English, she speaks Russian, it was translated. The term change of venue is subject to many interpretations. I included an affidavit in the material that I submitted to the BIA with regard to that. She acted pro se throughout. She acted with good faith throughout. Her husband was ill. I mean, he had been diagnosed with serious cancer and subsequently died. Now, was that the reason she did not attend the hearing? You know, I could... That's not in the record. That's not in the record. And I wouldn't, you know, I was just going to say it would be ingenuous for me to do so, because that was not the reason she did not attend the hearing. She did not attend the hearing because she told the hearing was going to be scheduled in Salt Lake. One more quick question. The visa wasn't, she did get an approved visa. But the BIA, I think, mentioned that she might have had the approved visa, but they hadn't filed the application for adjustment of status. And I think the BIA's procedures usually say, you know, you've got to file that for us to take cognizance of the situation. What do we do with that? Our sole remedy in this case at this point procedurally is to have the in absentia order reopened. That's the only thing that could be done. We're reviewing the BIA. At the time she went to the BIA, didn't file an application for adjustment of status, correct? And that's one of the things they require, I think. She did not. She filed the adjustment of status application with the Immigration Service, which they accepted. She didn't understand, nor did they understand they had no jurisdiction. That was returned to me. Maybe this is outside the record as well, but that was returned to me in May of last year when I got involved in the case. They found the adjustment of status. I have it in my pile of papers here. It was not submitted because the issue before the BIA and the immigration judge in the absentia matter is whether or not there were compelling reasons that she did not appear at the initial hearing. So I don't think it was possible for me procedurally to seek a remand for that purpose. Thank you, counsel. Even though you used up your time, we'll restore a minute for rebuttal since we took a lot of your time with questions. We'll hear from the government. May it please the Court, good morning. My name is Paul Ahern. I represent the respondent in this matter. I think the Court has correctly characterized the question here. It's whether the BIA acted arbitrarily or capriciously or irrationally in determining that the IJ was correct in not reopening this case. And the reason why that is the case is because the Petitioner here didn't present the exceptional circumstances that are required by statute in order to reopen this matter. The statute talks of serious issues. And I know this isn't our case, but let's say that the IJ initially had not given instructions on change of venue, but otherwise the facts were the same, that the person had been affirmatively misled by someone in the bureaucracy of the agency into thinking that there was a procedure that there wasn't. What would be the result there? I think, Your Honor, that would be fact-dependent, quite frankly. Some of this Court's jurisprudence. That's not an answer. Is that an exceptional circumstance where someone is affirmatively misled by the agency that is supposed to be handling the matter? Is that an exceptional circumstance? It may constitute an exceptional circumstance. It may constitute an exceptional circumstance depending on who's doing the misleading, I think. Okay. And if someone who, other than an IJ, if just a person at the desk, as in this kind of case, who has apparent authority to speak on behalf of the agency, is that sufficient? Well, again, that's not our case, but that may be sufficient in that case. Now, this Court in Singbatal stated that the reliance on a clerk's representations about the procedures that were involved, that was not reasonable to rely on. Now, if it were the case that, let's say, an IJ said nothing about what procedurally the petitioner had to do, or the IJ affirmatively misled the petitioner, that would be a different story than merely walking up to a clerk at the INS office and relying on that clerk to explain the procedures that were not explained in the immigration proceeding itself. What do we mean by a clerk? To whom did she talk at the Salt Lake City office? She says in her affidavit that she spoke to an INS officer. I'm not sure exactly who that would mean. It's not clear from the record exactly who she spoke to. But it wasn't necessarily a clerk. It was not, Your Honor. Right. Again, we have no way of knowing who it was that she spoke to. But what we do know, and what's clear from the record, is that the IJ did explain to her what the procedures were. The IJ clearly in the record said, I'm handing you the form. That had happened how long before her conversation in Salt Lake City with the INS officer? Now, according to her affidavit, she had two conversations with INS officers in Salt Lake City. One occurred before the October 3, 2002 hearing, the first hearing. In that conversation, the INS officer told her, you don't need to attend. Your I-130 is pending, and, you know, you've changed your address. You don't need to attend. She still chose to attend that first hearing. She said that she chose to attend it so that she could present the documents that she had in person. Okay. And the second conversation was how long after the hearing at which the IJ gave her the advice? Your Honor, I don't have the answer to that. I'm not sure it's clear from the record. I would have to go through the record to see exactly how long it was. But, again, it was after the IJ clearly told her. Right. But I guess the thing that I'm struggling with is there's nothing, especially for a layperson, there's nothing inherently unbelievable that things can change. The IJ tells her one thing, and then later someone tells her something else. Why can't someone credit that as being a change in the law? It isn't. The second information was wrong. But from the point of view of the listener, I don't understand why that is any different than not having been told something in the first place, to go in and check and see is this the way it's done and be told no. Well, again, for the reasons articulated in Singh Batal, I think it's unreasonable for a petitioner to rely on somebody in the INS office in Salt Lake City who's giving advice that's contrary, like directly contrary to what the IJ himself told her, that's contrary to the forms that the IJ presented to her, and not even check with the IJ back in Los Angeles to ensure that that information that was coming from this INS officer in Salt Lake City was correct. That, I would say, is unreasonable. That's the circumstance that we have here. Do you think that's unreasonable for a layperson who doesn't even speak English? I do. I do. Now, this is not the case, and again, I'm careful to take this case on its facts. This is not the case where the layperson wasn't advised by the IJ and is receiving information from some other INS officer. This is a case where she claims that this INS official is telling her something that's directly contradictory to what the IJ himself told her. And what's directly contradictory to the materials that the IJ in the record presented to her. Materials in English that she doesn't read. She had her brother-in-law, or her son-in-law, conceitedly helping her with all these materials. Well, why would they go to the INS office unless they were seeking advice? I'm sure that they were seeking advice. And they got it, and they followed it. Well, again, I would say it's not reasonable to follow contradictory advice from an INS clerk in a different jurisdiction that contradicts what the IJ told you. I have another question, too. This person is the beneficiary of an approved visa petition and is eligible for adjustment of status. And in a number of other cases that involve a person who is in that potential status in varying circumstances, in the last, say, six months, the government has sometimes been willing to entertain mediation to resolve the status of the individual. Is that something that the government would be amenable to in this case? At this time, Your Honor, no. Why? I will take that back and certainly raise it. I'm not sure that it has even been raised as a possibility, to be entirely honest with you. The government has indicated it wishes to mediate cases, and we thought that they had given some authority to their representatives. That's true. In this particular case, though, right now I can say that we are not willing to mediate this case. It is a procedural default, effectively. And I will certainly take this panel's concerns back, and perhaps the government's position on that will change. But at this point, we're not willing to do that. What's the age of this petitioner? I believe she's 70 years old right now. How old? I'm sorry. Seventy, I believe, depending on when her birthday is. I'm not aware of that. But I would like to turn to the visa petition itself and point out that what is before this Court is whether the BIA abused its discretion in not considering that visa petition, which was submitted just two days before the BIA's decision came out. As soon as she got the paperwork, didn't she start filing various things with this information in it, like three or four? I mean, multiple times she filed arguments and paper explaining that she had this? The visa petition itself was only filed to the BIA two days before the decision issued. The application for adjustment of status obviously was never submitted to the BIA. That's still not in the record to this day. And I would like to point out that in this Court's cases dealing with these situations, such as Singh, when a visa petition has been approved, there's always been something more to go along with that approved visa petition. And it can be summed up in the word diligence. In Singh, the Court emphasized that the petitioner there had been present for every hearing, I think five in total. He had been diligently pursuing his claim for a number of years, and he missed the final hearing by only a couple of hours. He was actually present at the courtroom. In Chowdhury, the Seventh Circuit case, again, the petitioner was actually present in the courtroom at the time of the hearing. And that compares disfavorably to this case, where regardless of whether the petitioner was actually notified that her I-130 was approved or not, there's nothing in the record indicating that she wasn't aside from her own statement. But the fact is that that petition languished for a year and a half, and there was absolutely no follow-up at all in determining whether that petition had been approved. There was no follow-up before the second hearing to present that to the IJ in the first instance. There was no follow-up to present that to the IJ in the reopening. There was no follow-up up until two days before the BIA's decision issued to present that to the BIA on appeal. And this Court made clear in Hernandez-Vivas, which involved a change of venue motion, that the petitioner bears the burden of following up in those circumstances. The petitioner bears some responsibility for being diligent in pursuing these claims. The BIA could not have considered, for reasons that we presented in our brief, the BIA could not have considered that material in the first instance. And we would argue that it would have been improper for the IJ to consider that material as well for those reasons. And in sum, I would just encourage this Court to find that it was not an abuse of discretion in this case for the BIA, to find that there weren't exceptional circumstances in this case. You want us to send this 70-year-old grandmother back to Europe, leaving her only daughter and grandchildren. That's a very nice position for the government to take. Your Honor, I think that at all stages we have appreciated the sympathetic nature of this case. The BIA specifically referred to that in its latest pleading here. But there is, as this Court has recognized, a value to the procedures involved in adjudicating these BIA cases. There is value to ensuring that these procedures are standardized. And for that reason, we would encourage this Court to find that there was no abuse of discretion in the BIA following its procedures. Should the Court decide there was an abuse of discretion, we would urge that the proper remedy would be to remand to the BIA to consider whether the supplemental material would warrant a remand further to the IJ. Thank you. Thank you. Mr. Littlefield, you have some rebuttal time. And if you would address the final comment of the government, which is assuming without necessarily deciding, obviously, at this point, that there were a holding in your client's favor, what do you think the proper remedy would be? I believe the proper remedy, Your Honor, should be to compel a reopening of the removal proceeding itself. All of the information was before the BIA. They could have treated what I submitted within a week of my involvement with the case as a motion to remand. They chose not to. The decision denying the appeal simply reiterated the language of the judge. It made no analysis of any of the allegations or affidavits or proof that was submitted. And all we're asking for here, Your Honor, is a hearing for the right to be heard before the immigration court under these circumstances and to have this not be treated as an in absentia removal, which robs Ms. Tyrova of all of her rights. And this is a tragic situation where an elderly woman relied on her son-in-law to help her out who doesn't speak English. And the language cited by the immigration judge is language that was in English which was translated to Ms. Tyrova. And I'm over time, but... Thank you, counsel. We understand both parties' positions and appreciate your arguments. The case just argued is submitted. Thank you, Your Honor. Oh, I would just, if I could just advise... With regard to mediation, I had made calls and attempted to mediate. Thank you, counsel. We'll hear one more and then take a short break.
judges: B. Fletcher, Fernandez, Graber